Calmo v. Garland Council have now appeared on our screen. Can you both hear from the courtroom? Yes, Your Honor, we can hear you. Have I heard from both of you? Yes, I can hear you, Your Honor. Fine, thank you. So you, Council, for the petitioner, petitioners may proceed. Thank you, and may it please the court. My name is Gautam Jagannath. I represent the petitioners in this matter. I desire to reserve two minutes for rebuttal. This case involves a monolingual indigenous Guatemalan mother and her minor daughter who had suffered the all too common occurrence that countless immigrants face all over the nation. The loss of a final administrative appellate order from the board, which essentially dooms the possibility for an appeal in the circuit court due to the strict timelines that Congress has imposed on immigration appeals. The board decision rests its laurels on what is perceived to be petitioners lack of diligence in pursuing a reissue of the decision. But Your Honors, this is a case of ineffective assistance of counsel, which so many immigrants experience in this field of law where bad lawyering runs rampant. Most immigrants who suffer ineffective assistance of counsel are never vindicated because they're physically removed from the US before they can find new counsel or file a complaint. And they never get back to the US. In this case, the court actually has an opportunity to rectify the wrong that the board disregarded, not by granting asylum, but just by allowing this appeal on the merits to go forward. We're not here to talk about the merits of the actual underlying case, only the chance for this case to be present again before this court. In this instance, the factual record is really quite clear that the petitioner retained previous counsel for the trial phase, used the same office for the board appeal. And while she didn't file her motion to reissue, which in the Ninth Circuit is treated as a motion to reopen within the 90 day timeframe, she simply could not because her attorney didn't communicate with her. And that's what makes this case so different from other unmeritorious appeals that may come before this court. The lead petitioner made every effort to stay in touch with her attorneys and hope for a basic modicum of communication after her denial was received. Nothing in this record... But Counselor, may I ask you procedurally, I would like a little help. The board held that she had not exercised due diligence. You disagree with that. Is that correct? Correct. All right. Now, if we were to agree with you that she should not be guilty of not exercising due diligence, what is the appropriate order? Do we send this back to the board for determination on the merits? Is that what you're saying? We send this case back for a reissue so that it can come back to the appellate court. Reissue of the decision so that they can then appeal. Right. We're not asking the board to change its decision on the merits. That's not what's at issue here. We're just asking for an opportunity to present a timely petition for review in front of this court. So nothing in the record indicated that this previous attorney or his office withdrew from the case. Notwithstanding that fact, the BIA customarily sends a courtesy copy of any order to a previous attorney, and that's to ensure proper notice. Isn't there a question as to that, as to whether or not the notice was properly mailed? I don't think that's at issue in this case because the notice was, in fact, mailed to the attorney of record. That's not at issue at all in this case. So this isn't a case of undeliverable mail, which the Ninth Circuit has ruled on several times. No one is saying that mail was not sent to the petitioner's previous attorney. The previous attorney simply chose not to explain to the petitioner of the final decision. Basically, Your Honor, what had happened was there was a billing dispute, and the previous firm chose to, quote, stop practicing in this case. However, the problem is, is that a prevailing legal ethics in the Washington State, an attorney cannot simply just cease conveying critical information about a case on account of a billing dispute. And especially when it involves a dispositive court order, an attorney, regardless of a billing dispute, is obligated to convey that information to his or her client. Counsel, is there a question as to whether or not there was a copy of the decision mailed to her in addition to her counsel? There was. And part of the presentation of the due diligence from the petitioner was that she continued to maintain contact with her previous address. A relative of her continued to check mail. We don't think that that is dispositive in this case. And the reason being is that the Ninth Circuit has already said in Garcia v. INS that notice to the applicant and service on the non-citizen is not dispositive. It is it is notice on the counsel of record, which is sufficient. And for that, there's a case called Hamazapriam v. Holder that goes through that analysis. So, so that even if she received, even if a copy of this was sent to her last address, that was not good enough? Not at all. And the reason why is because in petitioner's declaration to the board for the reissue, she stated very clearly that she notified a previous counsel of her move. And actually, that's one of the things that the government has kind of sought to portray this petitioner as apathetic and stated in footnote one of the brief of their brief, which is on page six, a petitioner didn't notify her previous counsel on the move. The declaration clearly supports that she had. And in fact, somebody from that office, in a very untimely manner had reached back out to her and indicated she needed to find new attorney, but it was way past the timeline for her to file a timely appeal in front of the circuit. The previous attorney basically just failed to be in contact with her and didn't bother to file a form which is required to the board to update the address for the petitioner having knowledge that she had moved. Does the record include the report of misconduct by the attorney who represented the petitioner after the first attorney disappeared? It absolutely does, Your Honor. It's detailed in there. It's in the admin record. And was this failure on the part of the attorney the basis or a basis for that discipline? Is that in the record? It should have been. Is it in the record, do you know? I'm not sure about the ultimate outcome of that. Basically, in this circumstance, the court shouldn't permit the board's decision, which basically doesn't analyze the evidence that's in the record. The board says that polling doesn't apply but doesn't get into the merits of why, notwithstanding the fact that petitioners argued ineffective assistance of counsel. And the government states that continues this argument that petitioners have not acted diligently. And, you know, this argument points to a couple of things. One is the fact that the petitioner apparently did not make enough attempts to reach out to her previous attorney. That just doesn't really make a lot of sense. And the reason why is the Ninth Circuit doesn't require maximum diligence, it requires reasonable diligence. And in her affidavit, she indicated that she made a number of phone calls. And that's about it. This court should not punish a petitioner, a petitioner who's an illiterate indigenous Guatemalan woman, whose primary language isn't even Spanish, let alone English, for not acting as an attorney in her own case when she had counsel representing her. And, you know, the case law indicates that diligence is a fact intensive and case specific inquiry. Petitioners have made a showing of diligence, and this case should be remanded so that it can be heard on the merits again. I'll reserve the balance of my time. Thank you. You may. Thank you. We'll hear from the government. Thank you. Good afternoon, Your Honors. My name is Spencer Shukart for the Attorney General. May it please the petitioner. What we know here, it's not about what the petitioner's prior counsel did. It's about what the petitioner didn't do. And what we know is that from October 2017 to October 2019, about two years, petitioner did essentially nothing, even though she had a reasonable suspicion that her prior counselor was withholding critical information from her in her own words. And from October 2019, until about seven months later, the petitioner through counsel did nothing, even though she knew that she had missed her opportunity to file the petition for review. Either one of those two periods of unreasonable inactivity is enough to justify the board's decision and to find that the board did not abuse its discretion in denying the motion. Excuse me, in denying the motion here. And the first question we want to look at when we're doing this is from Avajian is when did the petitioner reasonably suspect that there was some kind of misconduct? And she tells us in her own words, it's immediately in October 2017, counsel reaches out to her and says, I have important news. She throws a few phone calls back at her attorney and never calls him again. Instead, she moves out of state without telling anyone. What is the record established regarding the calls back? Did he respond to her when she called back? No, he didn't. Okay. How many times did she call? Something between four and five over a period of perhaps two or three days. Okay. Thank you. Does that mean that she should have gotten new counsel at that point? My understanding of the record is that when she contacted the counsel, that there had been no decision by the board. So it didn't matter to her case whether there was contact or not. And there was no real misconduct by the counsel until after the board decided the case. You're quite right, Your Honor. In fact, it's very dubious if there was any misconduct by this attorney at all. But we're in the universe here where we're taking the petitioner's affidavit as true because we're deciding the motion to reissue or reviewing the motion to reissue. And what she knew in her world was that she had a case pending before the board. She got a call from her attorney saying, hey, I have something important. Give me a call back. And then they never connect. So you're really arguing that she should have found a new attorney because of suspicions of her existing attorney when her existing attorney had not committed any misconduct at all yet. That was the theory that was the agency used. And that doesn't make much sense to me. I'm not arguing specifically that she needed to find a new attorney at that point. The part about getting a new attorney was that she wasn't due diligent. She wasn't diligent from that point forward. No. Well, the first inquiry is when does a reasonable suspicion arise? This case, her claim is that her attorney deliberately withheld critical information from her. And as far as October 2017, she gets a phone call saying, we have important information from you. And all she does is call a few times and then she leaves the state without telling anyone. That's not diligence, but that is a reasonable suspicion. Now, imagine how this case might. I think you're missing the point, though. Why would there be due diligence? Why would that requirement exist before there was any evidence of wrongdoing? Well, we're just at one step of the due diligence. In other words, you said she was on guard because she on notice because she was suspicious. Suspicious of what? Again, her claim, Your Honor, is that her attorney was withholding information from her. But he wasn't. Exactly. He wasn't. But that's not the point. She ends up missing her chance to file a petition for review because of her own lack of doing anything. But even if you're not buying on October 2017 date, mid-August of 2018 is when the time runs. She's still doing nothing from that point, even though she's still the last she's heard from her attorney, who she apparently owes a lot of money to. He's not trying to collect any money. He's not trying to find her. All she's doing is worrying. She had paid that attorney several thousand dollars in September 2017 to bring her appeal to the board, and then she got no notice that the board actually denied her appeal. So how is she supposed to know that she needed to act? There was a diligence issue. Your Honor, I don't think, remember, what we want to focus here is not on the brief because the petitioner's brief is actually fairly inaccurate. Petitioner's affidavit tells us immediately the whole time she is worried. She's worried about her attorney. She goes to, it's within days of failing to contact her attorney, that she goes to have someone remove her ISAP, her ankle bracelet. This person presumably works for enforcement and removal. I am basing my question on the affidavit. She said she paid her attorney several thousand dollars to represent her in an appeal. And the only reason why she didn't then go hire another counsel is because she had already paid someone to represent her in an appeal. Your Honor, diligence doesn't require going and getting another attorney. It just requires a reasonable investigation into your suspicions. She's suspicious immediately, but she does nothing. Instead, she leaves. She doesn't tell anyone where she's going. She hopes that she leaves her brother behind at the address. I'm curious, what should she have done in the government's view upon becoming suspicious that her attorney was in some way deficient? What was she supposed to do? A fifth phone call, a sixth phone call. She knows where the attorney's office is. She has people still in state. There's a million things. I don't want to get into all the things, but it's easy to imagine doing more. Petitioner's counsel claims maximal diligence isn't required, but it's hard to imagine doing less than what she did. You know, if you pay an attorney a substantial fee to represent you, I think you're entitled to trust that the attorney is going to do that and give you notice of any decision by a court. Of course you are. What you're advocating is something entirely different, that the client is supposed to second guess the attorney. To be completely, go ahead. I'm sorry, your honor. I see this completely differently from your honors, but let me abandon this point here. Not truly, but I'm going to move on because even if your honors believe that there was nothing more she could have done, that she was affirmatively misled, she still had the information that she needed to file her motion to reissue in October 2019, but she waited another seven months through counsel. You represented that counsel did nothing or she did nothing, but they filed a FOIA request in order to confirm their suspicion that the denial of appeal had been issued. And as soon as they received their record, they acted timely to file the motion to reissue. So there's not inaction as you represent. Action. That's what I'm going to point the court to Valeriano V. Gonzalez that's cited in my brief. In that case, the court, this court pointed out that pursuit of trivial information is not diligence. Now, in that case, the petitioner waited eight months after hiring his attorney and filing his motion to reissue. And what he was waiting for was the DHS to tell him if they would join in a motion to reopen. In this case, there's no reason to wait for the record. That's not a reasonable action because the vital information. Why wouldn't they? Why wouldn't counsel want to have the full record? You obviously want to have the record, but the vital information that you need in order to understand what's that your rights have been violated, allegedly, is that you missed your chance to appeal. And the only information she needed for that was to find out that the board had issued its order. She learned that in October 2019. Her counsel learned that in August 2019. What is the record going to do? There's nothing in the record that's going to, you know, justify it and say, oh, never mind. There's no case here. It's just a waste of time. That's it's it's more dilatory behavior out of out of this case. So you submit counsel should have taken action not knowing what had happened, not not being aware of the record. Counsel knew he had knew what he needed to know, which was that the time for the appeal. The result. No. All they knew was a representation from her former counsel who, by all accounts, was ineffective, a representation that the appeal had been denied. Why isn't a diligent counsel entitled to ask, get the board to confirm that that is, in fact, the case by making a reasonable FOIA request and then acting once they have official notice that the appeal has been denied? The cases in which you see counsel waiting for the record are cases in which all the only information you have about prior counsel is that a case was denied. That's not this case. The petitioner admits on page 20 that what she needed to know the vital information is that she lost her chance to file a petition for review. She's not complaining at all about petitioners prior counsel in the in the merits proceeding. She's saying that what what she needed to know was that she lost her chance for appeal, and she knew that immediately. And she doesn't need to know. She doesn't need to know whether there are what grounds there might be for an appeal. That's what that's the ground for. I mean, again, he's not even challenged the merits here. So that's completely beside the scope of what we're talking about. All right, petitioner, I'd like if I can, I'm just going to want to touch on the topic of sympathy if I could briefly, if I could go a little over. You are going over. Okay, the stakes are high in cases like these. That's why they seem sympathetic. We've if you've glanced at the underlying merits of this case, then you understand what was at stake for this petitioner and her little girl and why she doesn't want to go back. But still, but she did nothing. Making a few phone calls is nothing when that's on the line. I think we understand your position on that. Thank you, Your Honors. Are there any further questions from my colleagues? Thank you, counsel. I think you have about a minute for rebuttal if you wish to use it. Thank you, Your Honor. Quickly, I just want to say there's nothing wrong with waiting for the processing of a FOIA request. Freedom of Information Act requests customarily take about six months in immigration and mandating that a petitioner submit an ineffective assistance counsel claim or making sworn affidavit statements to this court or any judicial body without having the evidence makes absolutely no sense. The mandates of Losada require that complaints be made to prior counsel. And this court in Avagin v. Holder has said that the discovery of vital information occurs when the alien obtains a complete record of his immigration proceedings and is able to review that information with competent counsel. The time that was used while the petitioner was working with our office and undersigned counsel is not a waste of time. It is attorney preparation. Thank you so much. Thank you, counsel. The matter just argued is submitted for decision.
judges: SCHROEDER, SUNG, Antoon